# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| MICHAEL B. MCDONALD, ) | |
| ) | Bankruptcy No. 17-00400 |
| Debtor. ) | |
| _____) | |
| ) | |
| SHERYL L. SCHNITTJER, ) | |
| ) | Adversary No. 18-09036 |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| A.Y. MCDONALD INDUSTRIES, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

This matter came before the Court by telephonic hearing. Brian J. Kane appeared for Defendant A.Y. McDonald Industries, Inc. ("AY"). Jeffrey P. Taylor appeared for Plaintiff, Sheryl L. Schnittjer the Chapter 7 Trustee ("Plaintiff"). The Court heard argument and took the matter under advisement on the papers submitted. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

## STATEMENT OF THE CASE

Debtor Michael B. McDonald ("Debtor") filed the underlying Chapter 7 petition on April 10, 2017. (Bankr. No. 17-00400). On December 10, 2017,

Plaintiff filed this Adversary Proceeding to avoid and recover certain pre-petition transfers as preferential transfers under 11 U.S.C. §§ 547(b), 550(a). (ECF Doc. 1). On January 30, 2020, Plaintiff filed a Motion for Summary Judgment. (ECF Doc. 21). Defendant filed its Cross Motion for Summary Judgment the next day. (ECF Doc. 24). Both parties assert there are no genuine issues of material fact. The Court disagrees.

## FINDINGS OF FACT

AY is a corporate manufacturer of water works, plumbing, pumps, and natural gas products. Debtor is a former employee of AY, having served as Senior Vice President and member of the corporation's board of directors. Debtor is a relative of all shareholders of AY, and multiple individuals who serve on AY's board of directors and as its officers. Members of the Debtor's family own 100% of the stock and control of AY.

During his time as an employee, director, and officer of AY, Debtor embezzled approximately $3,880,504.00. When the embezzlement was discovered, AY terminated Debtor's employment as Senior Vice President. Debtor also resigned from the board of directors.

AY and Debtor entered into a restitution agreement on August 31, 2012—well before the bankruptcy filing. The restitution agreement required the Debtor to liquidate his 401(k) in favor of AY. Debtor defaulted on the restitution agreement

when he failed to liquidate his 401(k).  AY obtained a judgment of confession.  AY sought to enforce the judgment by writ of execution.

Debtor asked AY to cease collection efforts in exchange for an amendment to the restitution agreement.  AY agreed and the parties entered into an amended restitution agreement.  Under the agreement, Debtor executed a Limited Power of Attorney ("LPOA") whereby a third-party attorney-in-fact was appointed to receive—on Debtor's behalf—certain distribution from the J. Bruce McDonald Trust and the Delos L. McDonald Trust, and forward them to AY.  Both trusts contain a spendthrift provision stating:

> The **interests of beneficiaries** in principal or income **shall not be subject to the claims of any creditor**, any spouse for alimony or support, or others, or to legal process, **and may not be voluntarily or involuntarily alienated or encumbered**. This provision shall not limit the exercise of any power of appointment.
>
> The rights of beneficiaries to withdraw trust property are personal and may not be exercised by a legal representative, attorney in fact or others.
>
> \* \* \* \*
>
> The **interests of beneficiaries** in principal or income **shall not in any way** during their respective lifetimes **be subject to the claims of their creditors** or others nor to legal process, and **may not be voluntarily or involuntarily alienated or encumbered**, except that nothing in this paragraph shall preclude the assignment of a beneficiary's interest to his or her descendants.

(ECF Doc. 23, at 55, 63) (emphasis added).

3

The payments from those distributions began in 2014. They continued until the Debtor filed bankruptcy in April 2017. The following payments from the Debtor through the appointed attorney-in-fact were received by AY during the one-year period before the bankruptcy:

| DATE | AMOUNT |
|---|---|
| 06/16/2016 | $13,177.93 |
| 09/08/2016 | $7,167.82 |
| 12/17/2016 | $13,386.26 |
| 01/16/2017 | $17,848.33 |
| 03/17/2017 | $18,287.78 |

In total then, AY received $69,868.12.

On December 10, 2017, Trustee filed this Adversary proceeding to avoid and recover the above-mentioned payments as preferential transfers under 11 U.S.C. §§ 547(b), 550(a). AY filed its Answer and Affirmative Defenses on January 7, 2019. After some discovery and other proceedings, the parties filed these Cross Motions for Summary Judgment.

## DISCUSSION

### I. Summary Judgment Standards

Summary judgment is governed by Federal Rule of Bankruptcy Procedure 7056. Rule 7056 incorporates Federal Rule of Civil Procedure 56 in adversary proceedings. Fed. R. Bankr. P. 7056. Rule 56 states, in relevant part:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. **The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.** The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (emphasis added). The granting of "[s]ummary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." Hayek v. City of St. Paul, 488 F.3d 1049, 1054 (8th Cir. 2007) (citations omitted). "Summary judgment is appropriate when only questions of law are involved." Sarachek v. Wahls (In re Agriprocessors, Inc.), Ch. 7 Case No. 08-02751, Adv. No. 10-09196, 2012 Bankr. LEXIS 2452, at *6 (Bankr. N.D. Iowa May 30, 2012) (citing Anderson v. Hess Co., 649 F.3d 891, 894 (8th Cir. 2011)).

The movant bears the burden of showing that there are no genuine issues of material fact. Upper Explorerland Reg'l Plan. Comm'n v. Vanhorn (In re Vanhorn), 2021 Bankr. LEXIS 435, at *13 (Bankr. N.D. Iowa Feb. 25, 2021); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A "material fact" is one "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of material fact is genuine if a reasonable fact-finder could return a verdict for the nonmoving party

5

on the question." Wahls, 2012 Bankr. LEXIS 2452, at *7 (citing Anderson, 477 U.S. at 252). Evidence that raises only "some metaphysical doubt as to the material facts" does not create a genuine issue of fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting Matsushita, 475 U.S. at 587) (internal quotations omitted).

The same standards apply where, as here, the parties file cross motions for summary judgment. Hannahs v. Johnson, 2013 U.S. Dist. LEXIS 12358, at *4 (E.D. Ark. Jan. 8, 2013) ("When confronted with cross-motions for summary judgment, the Court evaluates each motion independently to determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law."). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact . . . ." Wermager v. Cormorant Twp. Bd., 716 F.2d 1211, 1214 (8th Cir. 1983).

## II. Trustee's Motion for Summary Judgment

### A. Insider Preferential Transfers under § 547(b)

Preference actions under § 547 of the Bankruptcy Code allow a trustee to recover certain payments received by a creditor during the period immediately preceding the bankruptcy filing. Section 547 provides, in relevant part:

6

> (b) Except as provided in subsections (c) and (i) of this section, **the trustee may . . . avoid any transfer of an interest of the debtor in property**—
> (1) to or **for the benefit of a creditor**;
> (2) for or **on account of an antecedent debt** owed by the debtor before such transfer was made;
> (3) made **while the debtor was insolvent**;
> (4) **made**—
>   (A) on or within 90 days before the date of the filing of the petition; or
>   (B) between ninety days and **one year before the date of such filing of the petition, if such creditor at the time of such transfer was an insider**; and
> (5) that **enables such creditor to receive more than such creditor would receive if**—
>   (A) **the case were a case under chapter 7** of this title;
>   (B) **the transfer had not been made**; and
>   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (emphasis added). The burden of proof in a preference action is governed by § 547(g), which provides:

> (g) For the purpose of this section, **the trustee has the burden of proving the avoidability of a transfer under subsection (b)** of this section . . . .

11 U.S.C. § 547(g) (emphasis added). Thus, Trustee bears the initial burden of proving that the undisputed facts establish each of the elements of a preference under § 547(b).

Several elements are not in dispute. There is no question that the five payments constitute a "transfer" of the Debtor's interest in property. Although the repayment arrangement under the LPOA violated the trust agreements' spendthrift

7

provisions, the Debtor's interest in each of the relevant distributions was—upon distribution—transferred in fact. AY also undoubtedly "benefited" from the payments by receiving $69,868.12 within the one-year period immediately preceding the Debtor's bankruptcy. Each payment was certainly made "on account of [Debtor's pre-existing indebtedness]" to AY for embezzlement. Each payment was made under the amended restitution agreement—which was specifically based on Debtor's antecedent debt.

There is also no doubt that these payments occurred at a time the Debtor was insolvent. A debtor is "insolvent" when, at the time of the transfer, the sum of the debtor's debts exceeds the sum of the debtor's fairly valued property. 11 U.S.C. § 101(32)(A). "In other words, the Court looks at [the] Debtor's balance sheet on the date of the transfer." Allred v. Nelson (In re Gould), Ch. 7 Case No. 19-50021, Adv. No. 20-05001, 2020 Bankr. LEXIS 3445, at *9 (Bankr. D.S.D. Dec. 8, 2020) (citing Doeling v. O'Neill (In re O'Neill), 550 B.R. 482, 508 (Bankr. D.N.D. 2016)). Trustee has offered Debtor's December 31, 2019 affidavit in which he stated that the sum of his debts exceeded the sum of his assets at the time of the transfers. At the time of filing, the sum of his assets was $768,657.50, while the sum of his debts was $2,409,941.96. Aside from generally denying the Debtor's insolvency, AY has offered nothing to dispute these figures.

There also is no real dispute that the five payments totaling $69,868.12 enabled AY to receive more than it would have in a Chapter 7 proceeding, or if the payments had never been made. On this issue, AY argues that it is a secured creditor by virtue of the LPOA—that is, that the LPOA confers a security interest in the Debtor's trust distributions. This argument is without merit.

Iowa law restricts both the voluntary and involuntary alienation of a beneficiary's interest in a spendthrift trust. See Iowa Code § 633A.2302 (2021). Although the LPOA purports to alienate the Debtor's prospective trust distributions to AY, the spendthrift provisions protecting the trusts prevent such a result. Thus, AY's status is that of an unsecured creditor, whose reception in the bankruptcy—upon liquidation—is limited to its pro rata share of the Debtor's remaining, non-exempt assets. Given the nature and volume of the claims made against the bankruptcy estate, that figure will be lower than the $69,868.12 it received in pre-petition payments.

### 1. Insider Status

The main issue in dispute is whether AY is an "insider." In order for the Trustee to avoid payments occurring more than 90 days but less than a year before Debtor's bankruptcy, the transferee (AY) must qualify as an "insider." 11 U.S.C. § 547(b)(4)(B). In the case of an individual debtor, § 101(31) defines the term "insider" to include: "[a] relative of the debtor or of a general partner of the debtor;

9

[a] partnership in which the debtor is a general partner; [a] general partner of the debtor; or [a] corporation of which the debtor is a director, officer, or person in control." 11 U.S.C. § 101(31)(A).

An insider can also be what is referred to as a "non-statutory insider." "A non-statutory insider 'is said to be an entity with a sufficiently close relationship to the debtor that its conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor.'" Sarachek v. Chabad of N. Fulton, Inc. (In re Agriprocessors, Inc.), Ch. 7 Case No. 08-02751, Adv. No. 10-09131, 2011 Bankr. LEXIS 3920, at *15–16 (Bankr. N.D. Iowa Oct. 14, 2011) (quoting In re Riversideworld, Inc., 366 B.R. 34, 43 (Bankr. N.D. Iowa 2007)).

"Beyond this definition, the Eighth Circuit determines whether a creditor qualifies as a non-statutory insider . . . through inquiry into whether the defendant had an ability to control a debtor." Sarachek v. Twin City Poultry (In re Agriprocessors, Inc.), Ch. 7 Case No. 08-02751, Adv. No. 10-09220, 2013 Bankr. LEXIS 1398, at *20 (Bankr. N.D. Iowa Apr. 3, 2013) (citations omitted). "[T]he ability of a creditor to compel payment of a debt is insufficient control to render the creditor an insider." Id. (quoting Stalnaker v. Gratton (In re Rosen Auto Leasing, Inc.), 346 B.R. 798, 805 (B.A.P. 8th Cir. 2006)) (internal quotations omitted). However, "[i]t is not necessary that a non-statutory insider have actual control; rather, the question is whether there is a close relationship [between the

10

debtor and creditor] and . . . anything other than closeness to suggest that any transactions were not conducted at arm's length." Sarachek v. Right Place Inc. (In re Agriprocessors, Inc.), Ch. 7 Case No. 08-02751, Adv. No. 10-09123, 2011 Bankr. LEXIS 3671, at *27 (Bankr. N.D. Iowa Sept. 30, 2011) (alteration in original) (quoting Clear Thinking Grp. LLC v. Brightstar US, Inc. (In re KCMVNO, Inc.), Ch. 11 Case No. 08-10600, Adv. No. 10-50730 (BLS), 2010 Bankr. LEXIS 3669, at *10 (Bankr. D. Del. Oct. 15, 2010)) (internal quotations omitted). Generally, "[t]hese inquiries are questions of fact." Twin City Poultry, 2013 Bankr. LEXIS 1398, at *21 (citing In re Missionary Baptist Found., Inc., 712 F.2d 206, 209 (5th Cir. 1983)). To the extent there exists a genuine dispute as to these control aspects, summary judgment is inappropriate. Id.; see also Fed. R. Bankr. P. 7056.

The parties agree that AY does not satisfy the traditional definition of "insider" under § 101(31). Based on its close relationship and dealings with the Debtor however, the Trustee argues that AY qualifies as a "non-statutory insider." Specifically, the Trustee argues that the Debtor's close family ties to AY inextricably pervaded the negotiations for repayment. That is, AY was able to leverage the Debtor's guilt and otherwise coerce him to agree to—among other things—liquidate his 401(k) and give up his trust distributions. The Trustee argues

11

that these circumstances are inapposite with the concept of an "arm's length" transaction.

AY argues that the record is bereft of the requisite indicia of control, and that any "closeness" was severed when AY learned of the Debtor's embezzlement. AY asserts that while it forewent the pursuit of litigation in favor of the restitution agreement, the parties have dealt with one another through counsel at arm's length throughout the entirety of the dispute. In addition, AY notes that the Debtor received and retained a September 2016 payment due to it under the amended restitution agreement. AY asserts that it would not have allowed the Debtor to retain those funds if it were in fact in "control" of the Debtor.

The record certainly indicates that the potential for insider control existed. However, the record is not entirely clear on the question of whether the Debtor's decision to enter into the restitution agreement was the result of AY's control or ability to control. While the Debtor certainly stands in a close familial relationship with the shareholders, multiple board members, and officers of AY, that fact alone is not dispositive of the issue of control. In re Petters Co., 499 B.R. 342, 366 (Bankr. D. Minn. 2013) ("[A] closeness of relationship alone is not sufficient to establish insider status for the avoidance of a particular transfer.").

As the non-moving party, AY is entitled to all favorable inferences from these confounding facts. In spite of the parties' assertion that there are no genuine

12

issues of fact—there is one, very important, issue of fact. That is, whether there was sufficient "control" of the Debtor by AY. Thus, the Court has no alternative but to find that a genuine dispute of material fact exists with regard to whether AY qualifies as an "insider" for purposes of § 547(b). That issue will need to be tried, unless there is further stipulation or clarification.

### III. AY's Motion for Summary Judgment

AY also moved for summary judgment on the Trustee's preferential transfer claims. AY first argues that the Trustee has failed to show he was an "insider." AY also argues that even if the payments constitute preferential transfers under § 547(b), they are unavoidable pursuant to § 547(c)(1) (contemporaneous exchange for new value), or (2) (ordinary course of business). The Court has already found that there is a genuine dispute of material fact with regard to AY's status as an "insider" and thus summary judgment is not available to either side on this issue. The Court will address the separate affirmative defenses in turn.

#### A. Contemporaneous Exchange for New Value under § 547(c)(1)

Section 547(c)(1) provides an affirmative defense for transfers intended as a contemporaneous exchange for new value:

> (c) The trustee **may not avoid** under this section a transfer—
>   (1) to the extent that such transfer was—
>     (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a **contemporaneous exchange for new value given to the debtor**; and
>     (B) in fact a **substantially contemporaneous exchange** . . . .

13

11 U.S.C. § 547(c)(1) (emphasis added).

AY argues that it made a contemporaneous exchange for new value to Debtor when it agreed to cease its collection efforts in exchange for the LPOA. AY argues that it and Debtor intended to make, and did in fact make, a contemporaneous exchange for new value on the payments Trustee is attempting to recover as preferential transfers. In order to succeed on this affirmative defense, AY must prove: (1) each party intended the exchange to be contemporaneous; (2) that it was in fact substantially contemporaneous; and (3) that the debtor received new value. 11 U.S.C. § 547(c)(1); see also Twin City Poultry, 2013 Bankr. LEXIS 1398, at *26.

"The critical inquiry in determining whether there has been a contemporaneous exchange for new value is whether the parties intended such an exchange." Lauter v. Wells Fargo Bank, N.A. (In re Gas-Mart USA, Inc.), 613 B.R. 168, 172 (B.A.P. 8th Cir. 2020) (quoting Tyler v. Swiss Am. Secs., Inc. (In re Lewellyn & Co., Inc.), 929 F.2d 424, 428 (8th Cir. 1991)) (internal quotations omitted). "The modifier 'substantial' makes clear that contemporaneity is a flexible concept which requires a case-by-case inquiry into all relevant circumstances." Id. (quoting Lindquist v. Dorholt (In re Dorholt, Inc.), 224 F.3d 871, 874 (8th Cir. 2000).

The Bankruptcy Code defines "new value" as:

> money or money's worth in goods, services, or new credit, or release
> by a transferee of property previously transferred to such transferee in
> a transaction that is neither void nor voidable by the debtor or the trustee
> under any applicable law, including proceeds of such property, but does
> not include an obligation substituted for an existing obligation . . . .

11 U.S.C. § 547(a)(2). AY asserts that it provided "new value" when it agreed to cease collection efforts on the debt.

The Court finds that AY's cessation of collection efforts does not constitute "new value" for purposes of § 547(c)(1). AY has failed to show that the Debtor received "money or money's worth" of new value on account of the LPOA. To the contrary, the LPOA—and AY's agreement to cease collection activities—merely provided a substitute means for repayment of a pre-existing debt. The record is devoid of specific, uncontroverted facts which entitle AY to summary judgment on this contemporaneous exchange for new value defense.

### B. Ordinary Course of Business under § 547(c)(2)

Section 547(c)(2) provides an affirmative defense for transfers made in the ordinary course of business:

> (c) The trustee **may not avoid** under this section a transfer—
>     (2) to the extent that such transfer was **in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee** and such transfer was—
>         (A) **made in the ordinary course of business or financial affairs of the debtor and the transferee**; or
>         (B) **made according to ordinary business terms** . . . .

11 U.S.C. § 547(c)(2) (emphasis added).

15

AY bears the burden of showing the transfer was made in the ordinary course of business. See Sarachek v. Crown Heights House of Glatt, Inc. (In re Agriprocessors, Inc.), 521 B.R. 292, 312 (Bankr. N.D. Iowa 2014). The defense's first requirement is that the debtor incurred the debt in the ordinary course of business. If a transferee cannot satisfy the threshold requirement, the Court need not address whether repayment transfers were made in the ordinary course of business of the parties or made according to ordinary business terms. Martino v. Miszkowicz (In re Miszkowicz), 513 B.R. 553, 564 (Bankr. N.D. Ill. 2014).

The purpose of the exception is "to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." Cent. Hardware Co. v. Sherwin-Williams Co. (In re Spirit Holding Co.), 153 F.3d 902, 904 (8th Cir. 1998) (quoting S. Rep. No. 95-989 at 88 (1978)). Thus, "a debt will be considered not incurred in the ordinary course of business if creation of the debt is atypical, fraudulent, or not consistent with an arms-length commercial transaction." Sarachek v. Lubicom, LLC (In re Agriprocessors, Inc.), Ch. 7 Case No. 08-02751, Adv. No. 10-09129, 2013 Bankr. LEXIS 1287 at *13 (Bankr. N.D. Iowa Mar. 29, 2013)(quoting Speco Corp. v. Canton Drop Forge, Inc. (In re Speco Corp.), 218 B.R. 390, 398 (Bankr. S.D. Ohio 1998)) (internal quotations omitted). "The ordinary course of business defense

16

should be narrowly construed." Crown Heights, 521 B.R. at 313 (citing U.S. Bank Nat'l Ass'n v. Petro Com. Servs. (In re Interstate Bakeries Corp.), 499 B.R. 376, 386 (Bankr. W.D. Mo. 2013).

The Court finds that AY has failed to meets its burden of proving that the debt was incurred in the ordinary course of business. Indeed, the debt stems from Debtor's embezzlement of more than three million dollars from AY, at a time in which he was an employee, officer, and director. Embezzlement is quite plainly not of the class of "normal financial relations" the ordinary course of business exception was meant to preserve. Thus, the Court need not reach the second prong of the test—whether the debts were paid in the ordinary course of business between the parties or on ordinary business terms.

## CONCLUSION

For the above reasons, it is hereby **ORDERED** that the Trustee's Motion for Summary Judgment is **DENIED**. **IT IS FURTHER ORDERED** that AY's Motion for Summary Judgment is **DENIED**. Judgment will be entered accordingly.

Dated and entered:

March 30, 2021

_____
THAD J. COLLINS,
CHIEF BANKRUPTCY JUDGE